UDNEY H. PENNIMAN AND THOMAS MILLS *v.* WILLIAM B. MUNSON AND LEMUEL B. PLATT.

[IN CHANCERY.]

Where A. B. C. and D. entered into a contract or mutual agreement, to purchase a certain patent, and by the terms of the contract, they were each to pay but one-fourth of the amount paid for the patent, and all were to share in making that payment, so that one should pay no more than the other; and C. and D., by an arrangement with the vendor of the patent, paid little or nothing, but the sum actually paid was taken from A. and B., they at the time supposing, that they were paying no more than C. and D., *it was held,* that this was fraudulent upon A. and B., and that upon an accounting in relation to this matter, A. and B. should charge C. and D. with an equal proportion of the money, which they had paid, so that in the purchase of said patent, both C. and D. shall pay as much for their interest in the same, as A. and B. pay for their interest in said patent.

It was also *held,* that though the mere act, of conveying to each of the parties an undivided interest in the patent so purchased by A. B. C. and D., did not create among them the relation of partners, yet, when they, after that purchase was made, agreed to convert their separate rights into a common interest, for the purpose of selling the patent, and agreed to divide the net proceeds equally between them, a partnership was created, and such a relation then existed, that each had the right to call the others to account for the avails they respectively had received.

APPEAL from the court of chancery. The orators set forth in their bill; that in September, 1841, the said Thomas Mills, one of

the orators, purchased a certain patent right, or the exclusive right under a certain patent, to make, use and vend a certain stump machine, within the town of Colchester. That afterwards the said Mills and said Udney H. Penniman, and one William B. Munson, of said Colchester, agreed mutually to buy the exclusive right under said patent for the residue of the county of Chittenden, each to pay one equal proportion of said purchase money, and to become equally interested in said purchase, and to share equally in the profits or loss if any; and that said Mills was to convey one equal undivided third of his interest in said patent, for the town of Colchester, to said Penniman and Munson, and all to share equally in the gain or loss, and said Penniman and Munson each to pay to said Mills one-third of what he paid therefor, and that Mills did so convey as agreed.

That thereupon they negotiated with one Ormsbee, agent of the owners of said patent, for the same, for the County of Chittenden, which trade or purchase was mainly negotiated by said Munson for himself and said Mills and Penniman; and that, as the orators supposed, the said purchase was made of said Ormsbee for $600, and that the orators paid $200 each, and supposed said Munson was to pay the other $200, as represented by said Munson and Ormsbee; and that said Ormsbee conveyed said patent to the orators and said Munson, to each an equal and undivided part.

That said Munson intending to defraud the orators, agreed with said Ormsbee, at the time of the said purchase, secretly, and without the knowledge of the orators, that the sum actually to be paid him should be only $400, and that it should be represented to the orators that the sum to be paid should be $600; and that the $200 to be paid by said Munson should be given in, and not be paid by said Munson; and that each of the orators did pay $200, and said Munson paid nothing in fact.

That in October, 1841, the orators and said Munson agreed with one Lemuel B. Platt, that he should be let in as a partner, to be equally interested with orators and said Munson, by paying to each of the others one fourth of the whole purchase price, said Munson representing the price for said county of Chittenden, to be $600. That said Platt came in and orators and said Munson so conveyed, and said Platt became jointly interested with the orators and said Munson.

That afterwards said Munson represented, that he had purchased the right, for the county of Franklin, of said Ormsbee for $700, and that his purchase should be for the benefit of said four partners, and thereby induced the orators and said Platt, to accept a deed of said patent for said county of Franklin, and each to pay him one-fourth of the price of $700; and that orators each did pay one-fourth of said sum; and that believing the representations of said Munson, the orators took said conveyance, and paid their proportion of said sum of $700, upon the representations of said Munson that he was giving the partnership the full benefit of his said purchase.

That said representations were false and fraudulent, and that said Munson paid only $275, for said county of Franklin, and that this sum was only to be paid in the event that said Munson sold and conveyed the same, if not to be deeded back, as agreed between said Ormsbee and Munson.

That afterwards the said partners bargained for said patent for the residue of the State of Vermont, and that the trade was mainly negotiated by said Munson, but in connection with the other partners, and said Ormsbee; and that he agreed to pay therefor the sum of $900, as the orators then believed and supposed; and that again said Munson, although he urged the other three to buy the same, yet he again made a secret agreement with said Ormsbee, that neither he nor said Platt should pay anything towards said purchase; but all should take the deed and share equally in the profits and property, and the orators each pay one-fourth of $900, and in fact said Munson on behalf of all the parties agreed with said Ormsbee to pay but $450 for said purchase, and to induce said Platt to enter into said purchase, said Munson agreed with said Platt that he should pay nothing, and that to carry out said fraud on the orators, and to compel them to pay the whole price, said Munson falsely represented said purchase to be $900; and that on the faith of said representation the orators each paid one-fourth of $900 to said Ormsbee for said purchase, and said deed was taken to the said Penniman, Mills, Munson and Platt jointly, for which the orators paid the whole price, and said Munson and Platt paid no part thereof.

That said partners made said purchases, and went on and sold rights under said patent, through said territory, for several years,

the said Mills making said sales under an agreement with the others that he should receive one-fourth of the proceeds for his services, and that the residue should be equally divided between said Penniman, Mills, Munson and Platt, and received large sums of money, and various kinds of property for such sales, the said Munson and Platt receiving each their proportion, the orators not knowing of the collusion and fraud, and that they had paid the whole price as aforesaid.

Prayer, that an accounting may be had of all the matters, contracts and dealings touching or concerning said patent right, and all matters relating to said partnership, and that said Munson and Platt be decreed to pay to the orators their just proportion of the purchase price of said patent, &c.

The defendants answered, and testimony was taken, which tended to prove substantially the facts to be, as set forth in the orators' bill.

March Term, 1853, Chancellor PIERPOINT, upon hearing the cause upon the record and the evidence, adjudged, that the orators are entitled to treat the defendants as equal partners with themselves, in all the transactions set forth in the bill, and that the defendants are bound to share equally with the orators in the original actual costs and expenses of the property purchased, and in the profits and losses sustained.

That the representations, by which the orators were induced to enter into the contract, were fraudulent; and that the agreements, with Ormsbee and with each other, under which the defendants avoided the actual payment of their share of the original purchase money of the property, were a fraud upon the orators, &c. And that the cause be referred to a special master, &c.

From this decree the defendants appealed.

*Phelps & Chittenden* for orators.

*Underwood & Hard* for defendant, Platt.

*C. Adams* for defendant, Munson.

The opinion of the court was delivered by

ISHAM, J. There can be no doubt that under the contract between

each of the plaintiffs and defendants in this case, a joint interest was obtained in the patent, which was referred to in the bill. That interest was created by the several conveyances of that patent, which were made to, and between these parties, embracing in the first place, the county of Chittenden, afterwards the county of Franklin, and subsequently the residue of this state. Under those conveyances, each of the parties held an equal undivided fourth part of the whole interest in that patent, over that territory. It is quite immaterial whether Munson, in negotiating the sale and purchase of that patent right, acted as the agent of Messrs. Penniman, Mills and Platt, or whether he was acting only in behalf of the owner of the patent, as the result shows that the conveyances vested the interest in this patent, over that territory, in these four persons. The object of this bill is simply to carry into effect the agreement of these parties, which was to take effect, after their joint interest had become perfected. It is obvious, however, that the purchase of the patent from the owner or his agent, was principally transacted by Mr. Munson, and that the plaintiffs, as well as Mr. Platt, were each induced to become purchasers of one-fourth of that interest, under a mutual agreement entered into with them by Munson, that they all were to become the exclusive owners of the patent right for that territory, and that each were to pay one-fourth of the purchase money, so that the expenditure made for the purchase of the patent, should be borne by them in equal proportions.

The conviction cannot be easily overcome, that Munson gave to each of the parties who made that purchase, assurances that they should pay for their interest, no more than he had paid for the same, to the agent or owner of the patent. It also satisfactorily appears from the testimony in the case, that the several, but undivided interests of all these parties were to be made, and held as a joint or common stock, for the purpose of selling and disposing of the same on joint account, and that the net proceeds, arising from the sales, were to be equally divided between them.

It is not pretended that Munson has paid any part of the purchase money, for the interest he holds in that patent; at the same time, he has received considerable sums of money from the plaintiffs, who are jointly interested with him, which they have paid for their interest in the patent. The same is true in relation to Mr.

Platt. He has paid little, if anything for the interest he holds. The notes he gave for the purchase money, were re-delivered by Mr. Munson, on the detection of the frauds practiced on him by Mr. Munson; and he still holds that interest, and claims his share of the proceeds arising from the sales under the patent.

Mr. Platt, in this transaction, stands in no more favorable light than Mr. Munson, for after his notes had been re-delivered to him, he suffered the negotiation to proceed with the plaintiffs, and consummated a contract, by which an additional sum of money was taken from them for the same patent over an enlarged territory. The conduct of both Munson and Platt was fraudulent, as it respects the plaintiffs; for they have obtained from them, almost, if not the entire amount of the whole purchase money for the patent, when under their contract, they were each to pay but one-fourth of that amount, and all were to share equally in making that payment, so that one should pay no more than the other. It is proper, therefore, whenever an accounting takes place between these parties in relation to this matter, that the plaintiffs should charge the defendants with an equal proportion of the money, which they have paid for the purchase of that patent, so that both Munson and Platt shall pay as much for their interest, as was paid by the plaintiffs for theirs. This was their agreement, and the inducement by which the plaintiffs became purchasers of the patent.

It is probable, that the mere act of conveying to them undivided interests in the patent, did not create among them the relation of partners, for individuals may have a joint interest in property, and still not be partners; but when, after that purchase was made, they agreed to convert their separate rights into a common interest, for the purpose of selling the same, and to divide the net proceeds equally between them, there can be no doubt, that a partnership was thereby created, or such a relation formed, that each has the right to call the others to account, for the avails they respectively have received. The bill states the facts from which the law creates that relation between them, and under this proceeding their agreement will be enforced, as decreed by the chancellor, that the orators and the defendants shall share equally in the original expenditure, for the purchase of the patent right, and in the net profits and losses on its resale, by either or all of them.

Upon the principles stated by the chancellor, the master has

made his report, to which there are no exceptions. We perceive that the master has allowed the sum of $150,00 as paid for the town of Colchester, when from the evidence we think but $100,00 was paid. That correction should be made. The case will therefore be remanded to the chancellor, to correct the decree accordingly. Its effect will be to deduct three-fourths of the difference between the two sums, with the interest from the claim allowed to Mills, and add the same in equal proportions to the amount due the others. In all other respects, the decree of the chancellor is affirmed.